## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE WILLIAMSPORT HOSPITAL d/b/a WILLIAMSPORT REGIONAL MEDICAL CENTER** | : : : : | |
| **Plaintiff** | : | **Civil Action No.** |
| | : | |
| **v.** | : | |
| | : | |
| **TOM PRICE, Secretary, Department of Health and Human Services, 200 Independence Ave, S.W. Washington, D.C. 20201** | : : : : : | |
| | : | |
| **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, 200 Independence Ave, S.W. Washington, D.C. 20201** | : : : : : | |
| | : | |
| **PATRICK CONWAY, Acting Administrator, Centers for Medicare and Medicaid Services, 7500 Security Boulevard Baltimore, Maryland 21244** | : : : : : | |
| | : | |
| **UNITED STATES CENTERS FOR MEDICARE AND MEDICAID SERVICES, 7500 Security Boulevard Baltimore, Maryland 21244** | : : : : : | |
| | : | |
| **ROBERT G. EATON, Chairman, Medicare Geographic Classification Review Board, 2520 Lord Baltimore Drive, Suite L Baltimore MD 21244** | : : : : : : | |

| | |
|---|---|
| **THE MEDICARE GEOGRAPHIC** | : |
| **CLASSIFICATION REVIEW** | : |
| **BOARD,** | : |
| **2520 Lord Baltimore Drive, Suite L** | : |
| **Baltimore MD 21244** | : |
| **Defendants** | : |

## COMPLAINT

Plaintiff The Williamsport Hospital d/b/a Williamsport Regional Medical Center ("Williamsport Hospital"), by and through its undersigned counsel, brings this action against Tom Price, in his official capacity as Secretary ("Secretary") of the United States Department of Health and Human Services ("HHS"), HHS, Patrick Conway, in his official capacity as Acting Administrator ("Administrator") of the United States Centers for Medicare and Medicaid Services ("CMS"), CMS, Robert G. Eaton, in his official capacity as Chairman of the Medicare Geographic Classification Review Board ("MGCRB") and MGCRB (collectively "Defendants") for violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and the Medicare Act, 42 U.S.C. § 1395 *et seq*.

In support hereof, Williamsport Hospital avers the following:

## I.    THE PARTIES

1.    Plaintiff Williamsport Hospital, Medicare Provider Number 39-0045, is a general, acute care hospital located in Williamsport, Pennsylvania. Williamsport Hospital is the only general acute care hospital both in the

2

Williamsport Core Based Statistical Area and Lycoming County. Williamsport Hospital is a provider of services as defined in the Medicare Act, 42 U.S.C. § 1395x(u), and has entered into an agreement with the Secretary to provide services to Medicare beneficiaries pursuant to 42 U.S.C. § 1395cc. Williamsport Hospital receives reimbursement from CMS for services rendered to Medicare beneficiaries.

2.     Defendant Tom Price is the Secretary of HHS and is being sued in his official capacity.

3.     Defendant HHS is a federal agency responsible for administering the Medicare Program, 42 U.S.C. §§ 1395 *et seq.*

4.     Defendant Patrick Conway is the Acting Administrator of CMS and is being sued in his official capacity.

5.     Defendant CMS is an agency within HHS. The Secretary has delegated responsibility for administering the Medicare Program to CMS.

6.     Defendant Robert G. Eaton is the Chairman of the MGCRB and is being sued in his official capacity.

7.     Defendant MGCRB is an agency within HHS. The MGCRB is responsible for approving or denying hospitals' applications for geographic reclassification, a critical component of the rate at which CMS reimburses hospitals for services rendered to Medicare beneficiaries.

## II.    JURISDICTION AND VENUE

8.    This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 5 U.S.C. § 701 *et seq*. (Administrative Procedure Act).  Additionally, 28 U.S.C. § 1361 grants this Court jurisdiction over "any action in the nature of mandamus."

9.    This Court may issue a declaratory judgment pursuant to 28 U.S.C. §§ 2101–2202.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391

## III.    FACTUAL BACKGROUND

### A.    The Medicare Program

11.    Congress enacted Medicare (Title XVIII of the Social Security Act) in 1965.  The Medicare Program establishes a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.  42 U.S.C. §§ 1395 *et seq.*

12.    Medicare Part A concerns "inpatient hospital services" and the payment for such services.  42 U.S.C. § 1395d(a)(1).

13.    Pursuant to 42 U.S.C. § 1395ww(d), CMS reimburses hospitals participating in the Medicare Program for inpatient services rendered to Medicare beneficiaries using Medicare's inpatient prospective payment system ("IPPS").

14.    The IPPS rate at which CMS reimburses a hospital is calculated using

a multi-step process.  First, the Secretary establishes a nationwide standardized rate for all hospitals located in "urban" or "rural" regions.  Second, the Secretary adjusts the standardized IPPS rate upward or downward, depending upon a number of variables.  42 U.S.C. § 1395ww(d)(2)-(4).

### B.    Wage Index Classification

15.    One such variable is the hospital's wage index classification.  The wage index adjustment is recomputed annually to reflect changes in the local labor costs of hospitals, as compared with the national average.   42 U.S.C. § 1395ww(d)(3)(E).

16.    Hospitals that incur wage costs that are higher than the national average will receive increased reimbursement from CMS, and vice versa.  Thus, a hospital's wage index classification is a significant variable component of the rate at which CMS will reimburse the hospital for inpatient services.

17.    A hospital's wage index is assigned by the Secretary based upon the specific geographic area in which the hospital is located.  Hospitals in rural areas are placed in a wage index that applies to all rural areas in a given hospital's state. In contrast, hospitals located in urban areas are grouped into labor markets based upon where they are physically located, known as a Core Based Statistical Area ("CBSA").  *See Geisinger Cmy. Med. Ctr. v. Sec'y, Dep't of HHS*, 794 F.3d 383, 387 (3d Cir. 2015).

5

18.    Congress determined, however, that this process would yield inequitable results where, for example, a hospital's low wage index does not accurately reflect the realities of its labor costs because the hospital competes for the same labor pool as nearby hospitals that are located in a higher wage index.

19.    Accordingly, beginning in the late 1980s, Congress amended the Medicare Act and allowed hospitals to reclassify from their geographically-based wage index to a nearby wage index if the hospital met several criteria.  Congress established the MGCRB to decide wage index reclassification requests and authorized the Secretary to promulgate guidelines for the MGCRB.  42 U.S.C. § 1395WW(d)(10).

20.    One of the criteria for wage index reclassification is that the hospital must establish a "close proximity" to the CBSA wage index to which it seeks to be reclassified.  42 C.F.R. § 412.230(a)(2).

21.    The "close proximity" requirement dictates that a hospital designated as "urban" can only reclassify to a wage index that is within (15) fifteen miles of the hospital.  Meanwhile, hospitals classified as "rural" can reclassify to any wage index that is within (35) thirty-five miles of the hospital.  42 C.F.R. § 412.230(b).

22.    Additionally, hospitals that qualify as a Rural Referral Center ("RRC"), 42 C.F.R. § 412.96, do not have to meet the "close proximity" requirement.  42 C.F.R. § 412.230(a)(3).

6

### C.    Wage Index Reclassification Process

23.    When the MGCRB grants an application for wage index reclassification, the new classification is valid for (3) three years beginning on the first day of the Federal Fiscal Year ("FFY")—October 1 of each year.  Thus, an application for reclassification for FFY 2017-2019 would run from October 1, 2016 through September 30, 2019.

24.    To apply for a wage index reclassification, a hospital must submit an application to the MGCRB (13) thirteen months prior to start of the FFY for which it seeks to be reclassified.  Thus, the deadline for a hospital applying for FFY 2017-2019 (beginning October 1, 2016) would be September 1, 2015.  42 U.S.C. § 1395ww(d)(10)(C).

25.    If the MGCRB issues an adverse decision, a hospital can request that the Administrator review the MGCRB's determination.    42 U.S.C. § 1395ww(d)(10)(C)(iii).

26.    Additionally, the Administrator has discretionary authority to *sua sponte* review any decision of the MGCRB.  42 C.F.R. § 412.278(c).

27.    The Administrator's decision is the final agency decision and is not subject to judicial review.  42 U.S.C. § 1395ww(d)(10)(C)(iii)(II); 42 C.F.R. § 412.278(f)(3), (4).

**D.     Section 401 and the Reclassification Rule**

28.     In 1999, Congress enacted Section 401, which enabled hospitals that were geographically located in urban areas to be treated as hospitals located in rural areas for the purposes of determining: (1) inpatient reimbursement, (2) outpatient reimbursement, and (3) critical access hospital eligibility.   The first purpose, codified at 42 U.S.C. § 1395ww(d)(8)(E), is at issue in this action.

29.     The Secretary was concerned about hospitals taking advantage of Section 401 and promulgated the Reclassification Rule, then codified at 42 C.F.R. § 412.230(a)(5)(iii), in response.

30.     The Reclassification Rule provided that: "An urban hospital that has been granted redesignation as rural under [Section 401] cannot receive an additional reclassification by the [MGCRB] based on this acquired rural status for a year in which such redesignation is in effect."

31.     This meant that a hospital with a Section 401 rural designation that sought reclassification to a different urban wage index had to cancel its Section 401 designation prior to the effective date of the wage index reclassification.

32.     For example, if a hospital with a Section 401 rural designation applied to the MGCRB for wage index reclassification for FFY 2014 on September 1, 2012, which is effective October 1, 2013, the hospital would have to cancel its Section 401 rural designation effective October 1, 2013, in conjunction with its

8

MGCRB wage index application.

33.    Additionally, this meant that if a hospital in an urban wage index wanted to switch into another urban wage index at the end of its 3 year term, and wanted to use the proximity rules applicable to rural hospitals in order to do so, CMS would reimburse the hospital at the lower statewide rural wage index instead of the urban wage index under which it was classified for at least the final (13) months of its 3 year term.

34.    However, on July 23, 2015, the United States Court of Appeals for the Third Circuit invalidated the Reclassification Rule in *Geisinger Community Medical Center v. Secretary of the Department of Health & Human Services*, 794 F.3d 383, 387 (3d Cir. 2015).

35.    Additionally, on February 4, 2016, the United States Court of Appeals for the Second Circuit invalidated the Reclassification Rule in *Lawrence + Memorial Hospital v. Burwell*, 812 F.3d 257 (2d Cir. 2016).

### E.    CMS' Delayed Response to *Geisinger* and *Lawrence*

36.    Despite the United States Court of Appeals for the Third Circuit invalidating the Reclassification Rule on July 23, 2015, CMS did not issue any guidance or rules concerning the Reclassification Rule until it published an Interim Final Rule (10) ten months later, on April 21, 2016.  *See* 81 Fed. Reg. 23428.

37.    The Interim Final Rule repealed the Reclassification Rule in all

jurisdictions.  81 Fed. Reg. 23428, at *23434.

38.    The Interim Final Rule explained that a hospital with a Section 401 rural designation could now apply to the MGCRB for an urban wage index reclassification using the relaxed proximity rules applicable to rural hospitals. Then, after the effective date of the MGCRB reclassification, the hospital would be paid according to its reclassified urban wage index, while still maintaining its Section 401 rural designation.  *Id*.

39.    Additionally, a hospital currently in the midst of a (3) three year urban wage index reclassification can be granted a Section 401 rural designation and still receive inpatient reimbursement based upon its active urban wage index classification.  *Id*.

40.    Thus, when a hospital possesses an MGCRB urban wage index reclassification and a Section 401 rural designation, the urban wage index classification controls for inpatient reimbursement purposes, while the Section 401 rural designation controls for other purposes in the Medicare Program.  *Id*.

41.    The Interim Final Rule stated that CMS would apply this policy in all jurisdictions beginning with MGCRB applications for FFY 2018.  *Id*.  Applications for FFY 2018 would be due to the MGCRB by September 1, 2016.

42.    Additionally, CMS stated that the policy would apply in all jurisdictions when deciding appeals of FFY 2017 applications that were pending as

10

of the date of Interim Final Rule. *Id*.

43. However, CMS did not apply the policy to wage index reclassification applications for FFY 2017 if the MGCRB had already issued its decision and there was no appeal pending.

44. Accordingly, CMS arbitrarily and discriminatively chose to apply the policy to some FFY 2017 applications, but not to all FFY 2017 applications, even though CMS issued the Interim Final Rule more than (5) five months prior to the start of FFY 2017.

45. Importantly, however, CMS declared in the Interim Final Rule that "this policy has already been effective as of July 23, 2015 in the Third Circuit." *Id*. at *23435.

46. The Final Rule, announced on August 22, 2016, adopted the Interim Final Rule "without modification" and again confirmed that "[t]he *Geisinger* decision invalidated the [Reclassification Rule], effective July 23, 2015, for hospitals in States within the Third Circuit's jurisdiction." 81 Fed. Reg. 56762, at *56926.

## IV.    WILLIAMSPORT HOSPITAL'S
## WAGE INDEX CLASSIFICATION

47. Williamsport Hospital is geographically located in the Williamsport, Pennsylvania CBSA (CBSA Number 48700).

48. On June 22, 2012, Williamsport Hospital filed two applications with

11

CMS. The first sought designation as a Rural Referral Center ("RRC") pursuant to 42 C.F.R. § 412.96, and the second sought a Section 401 rural designation pursuant to 42 C.F.R. § 412.103(a)(3).

49.    CMS approved both applications, effective June 26, 2012.

50.    Thereafter, on August 31, 2012, Williamsport Hospital filed an application with the MGCRB to reclassify into the urban State College wage index for FFY 2014-2016 (spanning October 1, 2013 through September 30, 2016), using the "Special rules" applicable to RRCs.

51.    Under the "Special rules," a hospital that qualified as an RRC as of the date of the MGCRB's review could reclassify to "the urban area that is closest to the hospital." 42 C.F.R. § 412.230(a)(3)(ii).

52.    As of August 31, 2012, State College was the urban area closest to Williamsport Hospital.

53.    However, the then-in-effect Reclassification Rule forced Williamsport Hospital to cancel its Section 401 rural designation and its RRC designation, effective October 1, 2013. If Williamsport Hospital had not cancelled its Section 401 designation effective October 1, 2013, the now-invalidated Reclassification Rule would have prevented the MGCRB from approving Williamsport Hospital's reclassification request.

54.    On February 6, 2013, the MGCRB approved Williamsport Hospital's

12

application to reclassify to the State College wage index, effective October 1, 2013 through September 30, 2016.

55.    On July 23, 2015, the United States Court of Appeals for the Third Circuit decided *Geisinger*, invalidating the Reclassification Rule.

56.    On August 31, 2015, Williamsport Hospital applied to the MGCRB for reclassification to the Bloomsburg-Berwick CBSA for FFY 2017-2019, effective October 1, 2016.

57.    Because the Bloomsburg-Berwick CBSA is approximately (20) twenty miles from Williamsport Hospital, Williamsport Hospital sought to use the proximity rules applicable to hospitals with a Section 401 or RRC designation.

58.    Because Williamsport Hospital cancelled its Section 401 and RRC designations ***solely because of the invalidated Reclassification Rule***, the *Geisinger* decision effectively restored those designations to Williamsport Hospital.

59.    Otherwise, Williamsport Hospital would have been forced to reapply for a Section 401 rural designation prior to sending its August 31, 2015 wage index application to the MGCRB.

60.    This would have resulted in CMS reimbursing Williamsport Hospital using the state-wide Pennsylvania "rural" wage index, instead of the higher State College urban wage index, from the effective date of its Section 401 rural

designation until the effective date of its new Bloomsburg-Berwick CBSA wage index classification on October 1, 2016 -- a period of approximately (14) fourteen months.

61.    Thus, because the Secretary forced Williamsport Hospital to comply with an unlawful and invalidated regulation, Williamsport Hospital was penalized millions of dollars, unless the Secretary restored its Section 401 rural designation.

62.    Although CMS' Interim Final Rule later removed this unlawful barrier, and now allows a hospital in Williamsport Hospital's position to receive a Section 401 rural designation while still receiving reimbursement based upon its active State College wage index, CMS' delay in promulgating any guidance or rule prior to the statutorily-mandated deadline to submit applications to the MGCRB for FFY 2017 denied Williamsport Hospital this opportunity.

63.    On February 17, 2016, more than (6) six months after the United States Court of Appeals for the Third Circuit invalidated the Reclassification Rule, the MGCRB denied Williamsport Hospital's application for reclassification and denied Williamsport Hospital's request for an oral hearing.

64.    The MGCRB denied Williamsport Hospital's request to use the proximity rules applicable to hospitals with a Section 401 or RRC designation despite the fact that the *Geisinger* decision invalidated the Reclassification Rule more than (6) six months prior.

14

65.    The MGCRB stated that Williamsport Hospital did not meet the proximity requirements for the Bloomsburg-Berwick CBSA and offered no explanation as to why it did not apply the proximity rules applicable to hospitals with a Section 401 or RRC designation.

66.    MGCRB's sole reason for denying Williamsport Hospital's wage index reclassification application was that Williamsport Hospital did not meet the "close proximity" requirement.

67.    Furthermore, the Administrator did not exercise his discretionary authority to review the MGCRB's decision, even after CMS issued its Interim Final Rule on April 21, 2016.

68.    Although the Administrator had until June 1, 2016—six weeks after CMS issued the Interim Final Rule—to exercise his discretionary authority, the Administrator failed to do so.

## V.    IMPLICATIONS FOR WILLIAMSPORT HOSPITAL

69.    Because the MGCRB and the Administrator refused to restore Williamsport Hospital's Section 401 rural designation after *Geisinger*, Williamsport Hospital applied for Section 401 and RRC designations on June 28, 2016 so that it could submit an application for FFY 2018-2020 using the proximity rules applicable to rural hospitals.

70.    CMS granted Williamsport Hospital's application for Section 401 and

RRC designations on August 26, 2016, with an effective date of June 29, 2016.

71.     Williamsport Hospital submitted its wage index reclassification application to the MGCRB on August 26, 2016, and is awaiting the MGCRB's decision

72.     When Williamsport Hospital's State College wage index reclassification ended on October 1, 2016, however, Williamsport Hospital had no active MGCRB wage index reclassification because the MGCRB denied its application for FFY 2017.

73.     Thus, as of October 1, 2016, CMS is reimbursing Williamsport Hospital based upon Pennsylvania's statewide "rural" wage index.

74.     The difference in reimbursement based upon Pennsylvania's rural wage index and the Bloomsburg-Berwick wage index is over $5,000,000 for FFY 2017.

75.     This means that Williamsport Hospital, *the only general acute care hospital in Williamsport and Lycoming County*, is arbitrarily and capriciously deprived of over $5,000,000 to provide health care services in the area.  This will reduce Williamsport Hospital's ability to provide adequate healthcare to the people of Williamsport and Lycoming County and decrease the overall level of patient care.

76.     Williamsport Hospital, its patients, and the citizens of Williamsport

and Lycoming County, are suffering and will continue to suffer irreparable injury by reason of Defendants' failure to allow Williamsport Hospital to reclassify into the Bloomsburg-Berwick wage index for FFY 2017-2019.

77.    Because Williamsport Hospital's wage index directly affects the level of care provided to its patients and the citizens of Williamsport and Lycoming County each and every day, only the declaratory, injunctive, and mandamus relief that this Court can provide will prevent the harm that Williamsport Hospital will imminently suffer.

78.    Absent this Court's intervention, Williamsport Hospital will be wrongly denied reclassification to the Bloomsburg-Berwick CBSA for FFYs 2017-2019, which will cause Williamsport Hospital to lose millions of dollars of Medicare reimbursement to which Williamsport Hospital is entitled.

79.    Because there is no judicial review from an adverse decision by the MGCRB, absent this Court's intervention, Williamsport Hospital will have no avenue to have a court review the Secretary's illegal regulatory scheme or overturn the MGCRB's improper denial of the hospital's application.

80.    Williamsport Hospital has been and continues to be adversely harmed by the Secretary's illegal regulatory scheme.

81.    Williamsport Hospital operations, business, and medical care have also been, and continue to be, adversely harmed by the Secretary's illegal

17

regulatory scheme.

## VI.    INADEQUACY OF REMEDY AT LAW AND PROPRIETY OF ISSUANCE OF A WRIT OF MANDAMUS AND EQUITABLE RELIEF

82.    The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

83.    Williamsport Hospital is suffering immediate and irreparable injury by reason of the Secretary's unlawful regulations and the denial of Williamsport Hospital's MGCRB application. Not only is Williamsport Hospital being denied the right to reclassify to a CBSA in which Williamsport Hospital should be allowed to reclassify for wage index purposes, but it has no other opportunity to challenge the Secretary's unlawful regulations and actions.

84.    Williamsport Hospital has no adequate remedy at law and cannot be adequately compensated by money damages. The award of money damages years from now will not help the patients in Williamsport Hospital's emergency room today.

85.    Williamsport Hospital has a clear right to the relief sought. There is no other adequate remedy to correct an otherwise unreviewable decision by the MGCRB and the Secretary. The Secretary has a plainly defined, nondiscretionary duty to provide the relief Williamsport Hospital seeks.

18

## COUNT I
## <u>VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT</u>

86.    Williamsport Hospital incorporates all of the preceding paragraphs as if fully set forth herein.

87.    The United States Court of Appeals for the Third Circuit invalidated the Reclassification Rule on July 23, 2015, yet neither the Secretary nor the Administrator took any action for (10) ten months until the Administrator issued the Interim Final Rule on April 22, 2016.

88.    This is in spite of the fact that the Secretary and Administrator were well aware of the strict timelines during which hospitals must file wage index reclassification applications, which affect a hospital's reimbursement for multiple years.

89.    The policy announced in the Interim Final Rule and Final Rule has been in effect in the United States Court of Appeals for the Third Circuit since July 23, 2015.

90.    Williamsport Hospital filed its wage index reclassification application for the Bloomsburg-Berwick CBSA promptly after July 23, 2015, on August 31, 2015.

91.    Furthermore, at the time CMS promulgated the Interim Final Rule, the limitations period for discretionary review by the Administrator had not run.

92.    Yet, the Administrator still did not exercise his discretion and review the MGCRB's denial.

93.    Moreover, the Interim Final Rule and Final Rule treat wage index reclassification applications for FFY 2018 differently than it treats applications for FFY 2017.

94.    However, CMS issued the Interim Final Rule more than (5) five months prior to the start of FFY 2017.

95.    The Interim Final Rule and Final Rule also treat some FFY 2017 applications differently than other FFY 2017 applications.  The Rule applies to FFY 2017 applications if there was an appeal pending before the Administrator on April 22, 2016, but does not apply if the Administrator had already disposed of the appeal, or if no appeal was filed.

96.    Thus, whether a hospital is given the benefit of the Rule depends upon: (a) whether a given hospital's previous three-year wage index classification began in FFY 2014, as opposed to FFY 2015 or 2016, (b) the sequential order in which the Administrator chose to address an appeal, and (c) the duration of the MGCRB's review of a reclassification request.

97.    Defendants' actions and regulatory scheme, which prevented Williamsport Hospital from reclassifying to the Bloomsburg-Berwick wage index are arbitrary, capricious, an abuse of discretion, discriminatory, disparate, and

constitutes agency action unlawfully withheld, in violation of the APA, 5 U.S.C. § 701 *et seq*.

## COUNT II
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

98.    Williamsport Hospital incorporates all of the preceding paragraphs as if fully set forth herein.

99.    Defendants' refusal to apply the Interim Final Rule and Final Rule to Williamsport Hospital's FFY 2017 application, while applying it to FFY 2018 and/or other applications, discriminates against Plaintiff.

100.    Likewise, applying the Rule to some FFY 2017 applications, but not Plaintiff's FFY 2017 application, in inequitable and discriminates against Plaintiff.

101.    Furthermore, by applying the policy to some FFY 2017 applications, but not others, Defendants demonstrate that there are no structural or operational barriers to applying the Rules to FFY 2017 applications.

102.    There is no rational basis for the temporal classifications created by the Interim Final Rule and Final Rule.

103.    Defendants' treatment of Williamsport Hospital is internally inconsistent and selectively treats Williamsport Hospital differently from other similarly situated Medicare providers.

104.    Defendants' disparate and discriminatory treatment of Plaintiff

21

violates Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

## COUNT III
## VIOLATION OF THE MEDICARE ACT

105.   Williamsport Hospital incorporates all of the preceding paragraphs as if fully set forth herein.

106.   On July 23, 2015, the United States Court of Appeals for the Third Circuit in *Geisinger* declared Defendants' regulatory scheme unlawful and in violation of Medicare Act.

107.   Despite this declaration that the Defendants' regulatory scheme was unlawful, the Defendants continued to maintain this unlawful regulatory scheme and continued to be in violation of the Medicare Act until it issued the Interim Final Rule ten months later, on April 22, 2016.

108.   Thus, when the MGCRB denied Williamsport Hospital's application for wage index reclassification on February 17, 2016, it did so based upon an illegal regulatory scheme.

109.   The regulatory scheme, which prevented the MGCRB from treating Williamsport Hospital as being located in a rural area for the purposes of the hospital's MGCRB application, is contrary to Section 401 and violates the Medicare Act and the law.

22

**WHEREFORE**, Plaintiff requests that this Court:

1.      Declare that the Defendants' actions and regulatory scheme violates the Administrative Procedure Act, and the Equal Protection Clause of the Fourteenth Amendment and the United States Constitution, and the Medicare Act.

2.      Grant a permanent injunction, and order of mandamus, or both:

  a. Ordering the Defendants and/or the Secretary, his successors in office, agents, employees, and all persons acting in concert with the Secretary, to provide specific relief to Williamsport Hospital by reclassifying Williamsport Hospital into the Bloomsburg-Berwick CBSA wage index through FFY 2019 and by reimbursing Williamsport Hospital using the Bloomsburg-Berwick wage index until the end of FFY 2019; and

  b. Ordering the Defendants and/or the Secretary, his successors in office, agents, employees, and all persons acting in concert with the Secretary, to provide payment of specific relief by way of monetary payments to Williamsport Hospital for the difference between the funds that CMS has already reimbursed Williamsport Hospital beginning on October 1, 2016 using the Pennsylvania rural wage index and the funds that CMS should have reimbursed Williamsport Hospital beginning on October 1, 2016 if CMS had

used the Bloomsburg-Berwick wage index, which Williamsport

Hospital was entitled to under the statutory and regulatory scheme.

3.    Require the Defendants to pay all legal fees and costs of suit incurred

by Plaintiff.

4.    Provide such other and further relief in favor of Plaintiff Williamsport

Regional Medical Center as this Court may deem just and proper.


                                        Respectfully submitted,

OF COUNSEL:

ELLIOTT GREENLEAF, P.C.


                                        /s Timothy T. Myers
MATTHEW G. BOYD                         TIMOTHY T. MYERS
PA 207366                               PA46959
PNC Bank Bldg, Suite 202                THOMAS B. HELBIG
201 Penn Ave.                           PA 321470
Scranton, PA 18501                      Union Meeting Corporate Center V
570-346-7569                            925 Harvest Drive
mgd@elliottgreenleaf.com                Blue Bell, PA 19422
                                        215-977-1000
                                        ttm@elliottgreenleaf.com
                                        tbh@elliottgreenleaf.com

DATED:  March 2, 2017