IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE WILLIAMSPORT HOSPITAL, d/b/a WILLIAMSPORT REGIONAL MEDICAL CENTER,<br><br>Plaintiff.<br><br>v.<br><br>SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | No. 4:17-CV-00393<br><br>(Judge Brann) |

**MEMORANDUM OPINION**

**FEBRUARY 1, 2018**

Defendants filed a Motion for Judgment on the Pleadings. For the reasons that follow, that motion will be granted.

**I.      BACKGROUND**

   **A.      The Basics of Medicare Reimbursement for Hospitals**[1]

When a hospital provides inpatient care to an individual covered by Medicare, the hospital is reimbursed at predetermined, fixed rates that depend on the category of treatment provided. Those rates are determined by, *inter alia*, the hospital's wage

---

[1]   Unless otherwise noted, all material in this section derives from *Geisinger Community Medical Center v. Secretary U.S. Dept. of Health and Human Services*, 794 F.3d 383, 386-88 (3d Cir. 2015).

index," and a hospital's wage index, in turn, depends—in the first instance—on the geographic location of the hospital.

All hospitals are classified as being located in either "rural" areas or "urban" areas. At the first step of the wage index calculation process, all rural hospitals within a given state are assigned the same wage index, and all urban hospitals are assigned a wage index based on the geographic area in which they are situated—*i.e.*, depending on which "Core Based Statistical Area" ("CBSA") in which they sit.

These initial wage index assignments may prove to be inequitable when, *e.g.*, a rural hospital has to compete for the same labor pool as a nearby urban hospital. Therefore, hospitals may be reclassified to a nearby wage index if certain criteria are met, including proximity to the CBSA whose wage index the hospital seeks to possess. Urban hospitals must be within 15 miles of the desired CBSA; rural hospitals, on the other hand, need only be within 35 miles. These reclassification requests are handled by the Medicare Geographic Classification Review Board ("MGCRB"). If the MGCRB issues an adverse decision, a hospital can appeal that request to the MGCRB's Administrator; the Administrator also has discretionary authority to *sua sponte* review any MGCRB decision.[2]

---

[2] 42 U.S.C. § 1395ww(d)(10)(C)(iii); 42 C.F.R. § 412.287(a) and (c).

In 1999, Congress enacted 42 U.S.C. § 1395ww(d)(8)(E) ("Section 401"),[3] which allows urban hospitals to be redesignated as rural ("§ 401 rural hospitals"). Although such redesignations seem counterintuitive in light of the higher wage indices of urban areas, a rural redesignation carries other benefits, which are not important for purposes of this opinion. The Secretary of the United States Department of Health and Human Services, however, saw the potential for hospitals to exploit this new provision—*i.e.*, saw that urban hospitals might first seek § 401 rural redesignation and then seek to reclassify back to the wage index of the CBSA in which they were located, thereby gaining the benefits inuring to § 401 rural hospitals while retaining the higher wage indices of urban hospitals. The next year, in response, the Secretary therefore promulgated the "Reclassification Rule," which stated that

> An urban hospital that has been granted redesignation as rural under [the regulation implementing § 401] cannot receive an additional reclassification by the [MGCRB] based on this acquired rural status for a year in which such redesignation is in effect.

### B. Williamsport Hospital's Redesignation and Reclassification

The Williamsport Hospital is a hospital located in Williamsport, Pennsylvania, that provides inpatient care to Medicare patients.[4] Although

---

[3] This provision is known as § 401 because it is § 401 of the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501 (1999).

[4] ECF No. 1 ¶ 1.

physically located within the Williamsport CBSA,[5] in June 2012 it sought and received a § 401 rural redesignation.[6]

Two months later, on August 31, 2012, it submitted a request to the MGCRB seeking to reclassify to the State College CBSA.[7] Because the Reclassification Rule was in effect, of course, it had to cancel its § 401 rural redesignation.[8] The request was for reclassification for Federal Fiscal Years ("FFY") 2014, 2015, and 2016—*i.e.*, for a period of time running from October 1, 2013, through September 30, 2016—and was, under applicable rules, due on September 1, 2012.[9] The MGCRB approved the reclassification request a few months later.[10]

In the summer of 2015, then, Williamsport Hospital was classified as an urban hospital and was using the wage index from the State College CBSA.

### C. The *Geisinger* Decision

On July 23, 2015, the United States Court of Appeals for the Third Circuit issued its decision in *Geisinger Community Medical Center v. Secretary United States Department of Health and Human Services*.[11] There, the Geisinger Community Medical Center—a hospital located in an urban area—had received

---

[5] *Id.* ¶ 47.
[6] *Id.* ¶ 48-49.
[7] *Id.* ¶ 50.
[8] *Id.* ¶ 53.
[9] *Id.* ¶ 50.
[10] *Id.* ¶ 54.
[11] 794 F.3d 383 (3d Cir. 2015).

§ 401 redesignation but was also seeking to reclassify to a CBSA more than 15 (but less than 35) miles away.[12] While its reclassification application was pending before the MGCRB, it commenced a lawsuit, arguing that the Reclassification Rule was unlawful. The Third Circuit agreed.[13]

### D. The Government's Response to *Geisinger*

On April 21, 2016, the United States Centers for Medicare and Medicaid Services ("CMS") published an Interim Final Rule repealing the Reclassification Rule nationwide.[14] The Interim Final Rule allowed § 401 rural hospitals to reclassify to another wage index, and, conversely, allowed hospitals with reclassified wage indices to acquire § 401 rural status.[15] It noted that the new policy would be applied to FFY 2018 applications (which were due on September 1, 2016) as well as FFY 2017 applications that were denied by the MGCRB but on appeal to the Administrator.[16] It also noted, however, that "this policy has already been effective as of July 23, 2015[,] in the Third Circuit"—*i.e.*, since date of the *Geisinger* decision.[17]

---

[12] *Id.* at 388.

[13] *Id.* at 395. The Second Circuit followed suit a few months later. *Lawrence + Memorial Hospital v. Burwell*, 812 F.3d 257 (2d Cir. 2016).

[14] 81 Fed. Reg. 23428-01.

[15] *Id.* at 23435.

[16] *Id.*

[17] *Id.*

CMS issued a Final Rule on August 22, 2016, which simply adopted the Interim Final Rule "without modification."[18] The Final Rule also noted that "[t]he *Geisinger* decision invalidated the [Reclassification Rule], effective July 23, 2015, for hospitals in States within the Third Circuit's jurisdiction."[19]

### E. Williamsport Hospital's Reclassification Application for FFYs 2017, 2018, and 2019

On August 31, 2015—one day before the September 1, 2015 deadline—Williamsport Hospital submitted a request to the MGCRB seeking to reclassify to the Bloomsburg-Berwick CBSA for FFYs 2017, 2018, and 2019.[20] Because at that time the Williamsport Hospital was, as noted *supra*, classified as an urban hospital, and because the Bloomsburg-Berwick CBSA is 20 miles from Williamsport Hospital, the application was denied on February 17, 2016.[21] Williamsport Hospital apparently did not appeal this decision, and the Administrator did not *sua sponte* review it.[22]

---

[18] 81 Fed. Reg. 56762, 56926.

[19] *Id.*

[20] ECF No. 1 ¶ 56; ECF No. 32 Ex. 3.

[21] ECF No. 1 ¶ 63.

[22] *Id.* ¶¶ 67-68. On June 28, 2016, nearly one year after the Third Circuit invalidated the Reclassification Rule, Williamsport Hospital applied for redesignation as a §401 rural hospital. *Id.* ¶ 69. Its application was granted on August 26, 2016. *Id.* ¶ 70. That same day, it submitted a request to the MGCRB seeking to reclassify to the Bloomsburg-Berwick CBSA for FFYs 2018, 2019, 2020, which request was apparently granted on February 16, 2017, after it had filed its Complaint in this Court. *Id.* ¶ 71; ECF No. 17 at 10.

## F. Procedural History

The Williamsport Hospital initiated the instant suit against Defendants[23] by filing a three-count complaint on March 2, 2017.[24] In Count I, it argues that Defendants violated the Administrative Procedure Act[25] in three ways: (1) by the failure of both the Secretary of HHS nor the Administrator of CMS to take "any action" between the time of the *Geisinger* decision and publication of the Interim Final Rule,[26] (2) by the failure of the Administrator of CMS to *sua sponte* review the MGRCB's denial of Williamsport Hospital's FFY 2017 reclassification request,[27] and (3) by applying the Interim Final Rule and Final Rule only to FFY 2018 applications and FFY 2017 applications on appeal from a MGCRB denial, but not to FFY 2017 applications that were not appealed (including Williamsport Hospital's application) or whose appeals have already been disposed of.[28] In Count II, it argues that this inconsistent application of the Interim Final Rule and Final Rule also violates the Equal Protection Clause.[29] And in Count III, it argues that Defendants "continued to maintain [an] unlawful regulatory scheme"—*i.e.*,

---

[23] Defendants are the United States Department of Health and Human Services and its Secretary; the United States Centers for Medicare and Medicaid Services and its Administrator; and the Medicare Geographic Classification Review Board and its Chairman.

[24] ECF No. 1.

[25] 5 U.S.C. § 701 *et seq.*

[26] ECF No. 1 ¶ 87.

[27] *Id.* ¶ 92

[28] *Id.* ¶¶ 93-95.

[29] *Id.* ¶¶ 98-104.

continued to apply the Reclassification Rule—between the time of the *Geisinger* decision and the publication of the Interim Final Rule.[30]

On July 6, 2017, Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[31] After review of the parties' papers, this Court ordered further briefing on certain identified issues,[32] which the parties submitted on January 16, 2018.

## II. DISCUSSION

### A. Standard of Review

When considering a motion for judgment on the pleadings, this Court uses the same standard as when it is considering a motion to dismiss for failure to state a claim.[33] Therefore, it assumes the truth of all factual allegations in the plaintiff's complaint and draws all inferences in favor of that party;[34] it does not, however, assume the truth of any of the complaint's legal conclusions.[35] If a complaint's factual allegations, so treated, state a claim that is plausible – *i.e.*, if they allow this

---

[30] *Id.* ¶¶ 105-09.

[31] ECF No. 13.

[32] ECF No. 27.

[33] *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 32 (3d Cir. 2011).

[34] *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 228 (3rd Cir. 2008).

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3rd Cir. 2016).

Court to infer the defendant's liability – the motion is denied; if they fail to do so, the motion is granted.[36]

### B. Whether Defendants Violated the APA by Failing to Take "Any Action" Between the Time of the *Geisinger* Decision and Publication of the Interim Final Rule

The Williamsport Hospital argues that Defendants violated the APA by failing to take "any action" between the time of the *Geisinger* decision and the publication of the Interim Final Rule. Under 5 U.S.C. § 706(1), a party may ask a court to "compel agency action unlawfully withheld or unreasonably delayed." The United States Supreme Court, however, has noted that such a claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."[37]

Williamsport Hospital has failed to identify what "discrete agency action," precisely, Defendants were "required to take." To the extent it might be claiming that Defendants were required to issue some sort of official guidance to hospitals in the Third Circuit, indicating how they were to proceed in light of *Geisinger*, Williamsport Hospital points to no authority establishing or outlining such a duty on the part of the Defendants. To the extent it might be claiming that Defendants were required to immediately cease use of the Reclassification Rule nationwide—as

---

[36] *Id.*

[37] *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original).

opposed to just within the Third Circuit—that claim must necessarily fail, as federal agencies need not follow a Circuit Court's decision outside that circuit.[38]

This claim, therefore, will be dismissed.

### C. Whether the Williamsport Hospital Has Standing to Bring Its Other Claims

When this Court ordered supplemental briefing, it asked the parties to address whether the Williamsport Hospital has standing to bring its claims.[39]

Under Article III of the United States Constitution, this Court has limited jurisdiction to decide certain enumerated "case[s] or controvers[ies]."[40] In order to state such a "case or controversy," a plaintiff must establish what is known as "standing"[41] by showing, *inter alia*, "a causal connection between the injury [alleged] and the conduct complained of."[42]

I conclude that the Williamsport Hospital lacks standing to bring the remainder of its claims. As outlined above, it voluntarily relinquished its § 401 redesignation in 2012 in order to comply with the then-applicable Reclassification Rule. When it submitted its reclassification request for FFY 2017 on August 31,

---

[38] *See, e.g.*, *Johnson v. United States Railroad Retirement Board*, 969 F.2d 1082, 1094 (D.C. Cir. 1992) ("When the Board's position is rejected in one circuit, . . . it should have a reasonable opportunity to persuade other circuits to reach a contrary conclusion.")

[39] ECF No. 27 ¶ 2.i; *see also* Federal Rule of Civil Procedure 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

[40] *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

[41] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[42] *Id.*

2015, then, it was not a § 401 rural hospital. And—although more than one month had passed since the *Geisinger* decision—it made no effort to redesignate itself as such.[43] Therefore, it cannot possibly establish a causal connection between its injury and the Defendants' conduct.

It cannot, for example, establish that the CMS Administrator's failure to exercise *sua sponte* review of its FFY 2017 reclassification application caused it to receive a lower wage index. Even if the Administrator *had* reviewed its application, the same decision would have been reached, because Williamsport Hospital was an *urban* hospital seeking to reclassify under rules applicable to *rural* hospitals. It was *not* a § 401 rural hospital denied reclassification by the Reclassification Rule.

Similarly, it cannot establish that its injury was caused by Defendants' application of the Interim Final Rule and Final Rule only to FFY 2018 and certain FFY 2017 reclassification applications. That is, if the Interim Final Rule and Final Rule were applied to Williamsport Hospital's FFY 2017 application, the same decision would have been reached, because—again—Williamsport Hospital was an

---

[43] In its Complaint, the Williamsport Hospital states that "[b]ecause Williamsport Hospital cancelled its [§ 401] designation[] solely because of the invalidated Reclassification Rule, the *Geisinger* decision effectively restored those designations to Williamsport Hospital." ECF No. 1 ¶ 58. Although this Court needs to accept all factual allegations in Williamsport Hospital's Complaint as true, it need not credit any of the complaint's legal conclusions—and this is undoubtedly a legal conclusion.

The Williamsport Hospital attached its FFY 2017 application to its supplemental brief. ECF No. 32, Ex. 3. Although that application requested "the use of the Special Access rules that were applied to our application in 2012 that allowed us the 35 miles as a [Rural Referral Center]," there is no indication that Williamsport Hospital was actually seeking to restore its § 401 rural redesignation. *Id.*

2015, then, it was not a § 401 rural hospital. And—although more than one month had passed since the *Geisinger* decision—it made no effort to redesignate itself as such.[43] Therefore, it cannot possibly establish a causal connection between its injury and the Defendants' conduct.

It cannot, for example, establish that the CMS Administrator's failure to exercise *sua sponte* review of its FFY 2017 reclassification application caused it to receive a lower wage index. Even if the Administrator *had* reviewed its application, the same decision would have been reached, because Williamsport Hospital was an *urban* hospital seeking to reclassify under rules applicable to *rural* hospitals. It was *not* a § 401 rural hospital denied reclassification by the Reclassification Rule.

Similarly, it cannot establish that its injury was caused by Defendants' application of the Interim Final Rule and Final Rule only to FFY 2018 and certain FFY 2017 reclassification applications. That is, if the Interim Final Rule and Final Rule were applied to Williamsport Hospital's FFY 2017 application, the same decision would have been reached, because—again—Williamsport Hospital was an

---

[43] In its Complaint, the Williamsport Hospital states that "[b]ecause Williamsport Hospital cancelled its [§ 401] designation[] solely because of the invalidated Reclassification Rule, the *Geisinger* decision effectively restored those designations to Williamsport Hospital." ECF No. 1 ¶ 58. Although this Court needs to accept all factual allegations in Williamsport Hospital's Complaint as true, it need not credit any of the complaint's legal conclusions—and this is undoubtedly a legal conclusion.

The Williamsport Hospital attached its FFY 2017 application to its supplemental brief. ECF No. 32, Ex. 3. Although that application requested "the use of the Special Access rules that were applied to our application in 2012 that allowed us the 35 miles as a [Rural Referral Center]," there is no indication that Williamsport Hospital was actually seeking to restore its § 401 rural redesignation. *Id.*

*urban* hospital seeking to reclassify under rules applicable to *rural* hospitals, not a § 401 rural hospital denied reclassification by the Reclassification Rule.

And finally, Williamsport Hospital cannot establish that its injury was caused by Defendants' continued application of the Reclassification Rule after *Geisinger*, since its FFY 2017 reclassification *was never subject to the Reclassification Rule*. Once again: Williamsport Hospital was an *urban* hospital seeking to reclassify under rules applicable to *rural* hospitals, not a § 401 rural hospital.

Therefore, Williamsport Hospital lacks standing to bring the remainder of its claims, all of which will be dismissed.

## III. CONCLUSION

For the reasons discussed above, Defendants' Motion for Judgment on the Pleadings will be granted, and Williamsport Hospital's Complaint will be dismissed in its entirety. Because this Court cannot discern how Williamsport Hospital can amend its complaint to surmount the identified deficiencies, the dismissal will be with prejudice, and Williamsport Hospital will not be granted leave to amend.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge